UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMBER LYNN FERRY,

                                               Plaintiff,

                                               v.

                                         DECISION AND ORDER

                                         19-CV-1642L

ANDREW SAUL,
Commissioner of Social Security,

                                             Defendant.
_____

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On November 3, 2016, plaintiff, then twenty-nine years old, filed an application for a period of disability and disability insurance benefits, alleging disability beginning April 1, 2010. (Administrative Transcript, Dkt. #4 at 15). Her application was initially denied. Plaintiff requested a hearing, which was held November 1, 2018 before Administrative Law Judge ("ALJ") Timothy M. McGuan. The ALJ issued an unfavorable decision on December 5, 2018. (Dkt. #4 at 15-20). That decision became the final decision of the Commissioner when the Appeals Council denied review on October 10, 2019. (Dkt. #4 at 1-3). Plaintiff now appeals.

The plaintiff has moved for remand of the matter for further proceedings (Dkt. #5), and the Commissioner has cross moved (Dkt. #7) for judgment on the pleadings, pursuant to Fed. R. Civ.

Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the decision appealed-from is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The five steps are: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";   (3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations; (4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [her] past work; and (5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v). "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ initially determined that plaintiff's date last insured was September 30, 2011, and that she therefore needed to establish disability on or before that date in order to be entitled to a

2

period of disability and disability insurance benefits. The ALJ's decision summarizes plaintiff's health records before, during and after that date, focusing upon plaintiff's mental health, given that she identified bipolar disorder, borderline personality disorder, anxiety, affective disorder, and depression as disabling conditions on her application. (Dkt. #4 at 15). Upon review of the record, the ALJ determined at step two that plaintiff had failed to establish that she had any medically determinable impairment that was "severe" within the meaning of the regulations, and therefore found her "not disabled."

## I.   The ALJ's Step Two Finding

Plaintiff argues that the ALJ erred in declining to find that her bipolar disorder was "severe" at step two.

Notwithstanding the strength of the word "severe," the second step's evidentiary requirement is *de minimis*, and intended only to screen out the truly weakest of cases. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Thus, a step two finding of "not severe" is only appropriate where "the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect'" on an individual's ability to perform basic work activities. *Rosario v. Apfel*, 1999 U.S. Dist. LEXIS 5621 at *14 (E.D.N.Y. 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987)). "Basic work activities" are the "abilities and aptitudes necessary to do most jobs," and they include physical, postural and sensory functions, as well as mental functions like understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

Here, the ALJ noted a distinct absence of evidence that plaintiff had received a mental health diagnosis, or undergone mental health treatment, in or near the period under consideration

– that is, between April 1, 2010 (the alleged disability onset date) and September 30, 2011 (plaintiff's date last insured). Although some of plaintiff's medical records from 2011 listed bipolar disorder as a prior diagnosis, these listings appeared to be based on plaintiff's self-reports, and were not reflective of any contemporary diagnosis, evaluation, or treatment.

Although plaintiff testified at her hearing that she had received mental health therapy on and off over the years for self-harm behaviors and/or auditory hallucinations, beginning at age 13, she conceded that she had not sought or received any during the relevant period, and the physicians from whom she sought treatment for other issues in 2010-2011 (e.g., asthma) did not observe any symptoms of mental illness, describing plaintiff's demeanor and mood as normal and cooperative.

Indeed, the record does not document any formal mental health diagnosis or reflect a course of mental health treatment until on and after May 4, 2015, when plaintiff was evaluated and diagnosed with bipolar disorder, borderline personality disorder, and unspecified trauma, and began receiving regular mental health counseling and psychiatric medication. (Dkt. #4 at 18).

Plaintiff argues that the lack of evidence of mental health treatment and symptomology between or before April 1, 2010 and September 30, 2011 indicates a gap in the record which the ALJ was obligated to cure. Plaintiff also suggests that the ALJ should have recontacted plaintiff's treating psychiatrist, Dr. Joshua Morra, for clarification as to whether the "ongoing" psychological limitations he described in an October 24, 2018 mental RFC opinion (Dkt. #4 at 579-83), which the ALJ declined to credit because it was too far removed from the period under consideration, had been present prior to September 30, 2011.

Initially, it does not appear that there were "missing" medical records from in or around the relevant period, and as such, any request for additional records would have been futile. Plaintiff identified the start of her most recent course of mental health treatment as January 2015 and did

4

not identify any mental health treatment providers from in or around 2010-2011. It thus appears that there were simply no mental health treatment records from that period to be obtained. (Dkt. #4 at 132, 135).

To the extent that the ALJ interpreted plaintiff's failure to seek or undergo mental health treatment in 2010-2011 and thereafter as evidence that she did not suffer from greater-than-minimal limitations during that period, his reasoning was sound. *See Depasquale v. Commissioner*, 2020 U.S. Dist. LEXIS 119093 at *9-*11 (W.D.N.Y. 2020) (ALJ did not err in finding plaintiff's bipolar disorder non-severe, where the record shows that plaintiff worked after the diagnosis, did not present to medical examinations with complaints or symptoms of mental illness, and was treated solely with medication from a primary care physician); *Diaz-Sanchez v. Berryhill*, 295 F.Supp.3d 302, 206 (W.D.N.Y. 2018)(plaintiff's failure to seek treatment for an alleged impairment suggests that the associated symptoms and limitations were not serious). While the record does contain some sporadic treatment records from 2010-2011 (e.g., records of annual physicals from plaintiff's primary care physician, Dr. Ronald Clarke, reflecting asthma-related complaints), none reflect any observation of any abnormal mental symptoms or complaints from plaintiff about any mental symptoms, and none recommend or prescribe any kind of mental health treatment. (Dkt. #4 at 518-24).

Furthermore, although plaintiff argues that the ALJ could or should have recontacted Dr. Morra to determine whether his October 2018 opinion was meant to reflect limitations prior to September 30, 2011, it is clear from the face of Dr. Morra's opinion that it could not have done so. Dr. Morra, by his own reckoning, did not begin treating plaintiff until in or after March 23, 2015, some five years after plaintiff's alleged onset date. His opinion indicates that it is based on plaintiff's treatment history with Dr. Morra's office since that date, and does not reference any

knowledge or review of records concerning any prior mental health treatment. Dr. Morra speaks of plaintiff's functioning only in present-tense terms.

While a retrospective diagnosis may be probative of an earlier-arising disability where it is *not* contradicted "by other medical evidence or overwhelmingly compelling non-medical evidence," *Valerio v. Commissioner*, 2009 U.S. Dist. LEXIS 68634 at *52-*53 (E.D.N.Y. 2009), there was contradictory evidence here. In declining to find that Dr. Morra's 2018 opinion was probative of plaintiff's limitations in 2010-2011, the ALJ not only noted the four year lapse between plaintiff's last date insured and her commencement of treatment with Dr. Morra, but also identified and discussed inconsistent medical evidence from 2010-2011, including Dr. Clarke's examination records which contained no complaints or findings of any symptoms of mental illness, and plaintiff's application information and testimony, which confirmed the absence of any treatment for psychiatric symptoms in 2010-2011. (Dkt. #4 at 519, Dr. Clarke's April 18, 2011 examination, noting normal affect, orientation, attitude and mood).

In short, the record does not lend any support to plaintiff's claim that her alleged mental health impairments "ha[d] more than a minimal effect on [her] ability to work" at any point between April 1, 2010 and September 30, 2011. SSR 85-28, 1985 SSR LEXIS 19 at *9. *See generally Zongos v. Colvin*, 2013 U.S. Dist. LEXIS 185542 at *10-*11 (N.D.N.Y. 2013) (ALJ's failure to apply correct standard at Step 2 is harmless where "[n]othing in the medical evidence supports a finding that [plaintiff's alleged impairment] cause[d] any functional limitation of ability to perform work-related activities").

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #5) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #7) is granted. The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
November 13, 2020.